Joyce E. Oakes, Widow of James C. Oakes, deceased, Petitioner v. Workmen's Compensation Appeal Board (Pennsylvania Electric Co.), Respondents.

Argued October 5, 1983, before Judges Rogers, Barry and Barbieri, sitting as a panel of three.

*John H. Bozic, Jr., Bozic, Thomas & Johnson,* for petitioner.

*Howard N. Plate, Plate, Shapira, Hutzelman, Berlin & May,* for respondents.

OPINION BY JUDGE BARBIERI, January 10, 1984:

Joyce E. Oakes, Claimant, widow of James C. Oakes, appeals here the order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision dismissing her claim petition filed on behalf of herself and three of the four children of herself and the decedent.[1]

James C. Oakes, at the time of his death on September 17, 1977, was employed by Pennsylvania Electric Company (Company) as a line foreman, and on that date he was called upon as "duty foreman" to

---

[1] Claimant represents herself and three of her four children as dependents under Section 307 of the Act of June 2. 1915. P.L. 736, as amended, 77 P.S. 541, 562. The oldest son was 19 at the time of the deceased employe's death on September 17, 1977. and was. therefore, ineligible for benefits, and the youngest child was born after the death.

deal with an outage in a town served with electric power by Company. In response to this emergency he proceeded in the company car to the Meadville Office some 13.3 miles from his home. The outage was corrected by 9:00 A.M. and decedent then engaged in some non-business shopping, stopping also at some bars where he consumed alcoholic beverages. During this period, however, decedent's "duty foreman" status remained in effect in that he was subject to call on the radio with which the car was equipped or on the "pager" with which he was also provided.[2] At 4:00 P.M., on the road home, decedent was killed in an automobile accident. The referee found that decedent's state of intoxication was not the cause of the accident, but he also "found" that decedent was not in the course of his employment at the time of his death.

Since the determination of whether an employee is in the course of his employment at the time of injury is one of law based upon the facts in the case, *Aluminum Company of America v. Workmen's Compensation Appeal Board (Lindsay)*, 33 Pa. Commonwealth Ct. 33, 380 A.2d 941 (1977), we must examine the referee's findings on the issue of employment in light of the record and the applicable law. The referee's relevant findings are as follows:

---

[2] Decedent's supervisor, Lorance Wasson, General Foreman, testified

Q. So the pager could be used when you are outside the car, the telephone when you were inside or home and the radio when you were in the car. Those are the techniques of communication?

A. That is true.

Q. All these from time to time depending on the circumstances would be used by the dispatcher to reach the duty foreman?

A. That would be true, yes.

8. The Decedent left the Defendant's Meadville Office at approximately nine a.m.

9. During the next seven hours, until approximately four p.m., the Decedent was on personal business. He purchased building materials and electrical equipment for an addition he was putting on his house. In addition thereto, he made at least six stops at various bars and consumed alcoholic beverages. These stops led him through a zigzag course in the Meadville area. At no time during this period was the Decedent engaged in the furtherance of the business or affairs of his employer.

10. At approximately four p.m., *on a road which would be a logical route between the Defendant's Meadville Office and the Decedent's home* and approximately 6.2 miles from the Decedent's home, the Decedent was killed as a result of an automobile accident.

11. A witness to the collision testified that she was walking along the berm of the road where the accident occurred and saw a vehicle proceeding toward her in the middle of the road. This vehicle collided with the vehicle of the Decedent. She did not see the Decedent's car until the time of the collision, but was of the opinion that if the Decedent had swerved to avoid the collision, he would have struck the witness. *Your Referee accepts her testimony as fact.*

12. A gas chromatography test showed that the Decedent, at the time of his death, had a blood alcohol content of 285 milligrams of ethanol.

13. 285 milligrams of ethanol indicates a severe degree of ethanol intoxication or poisoning and

would result in major disturbances of equilibrium and coordination, retardation of the thought processes and a clouding of consciousness. *However, there was no showing that the Decedent's intoxication caused the accident.* (Emphasis added.)

At the outset we note that compensation laws are socially oriented and must be construed liberally in order to effectuate their beneficent purposes. *Dunn v. Trego,* 279 Pa. 518, 124 A. 174 (1924); *Carpinelli v. Penn Steel Castings Co.,* 209 Pa. Superior Ct. 390, 227 A.2d 912 (1967); furthermore, we note that the claimant in whose favor liberality should be indulged in this case, is the widow on her behalf and on behalf of the children, and not the deceased employee.

Most vital, however, in this case, is the established principle that one who is employed to travel and who is provided with transportation in order to carry out such duty has a scope of employment that is "necessarily broader than that of an ordinary employee, and is to be liberally construed to effectuate the purposes of the Act." *Aluminum,* 33 Pa. Commonwealth Ct. at 36, 380 A.2d at 943. Such employees, while using the employer's transportation to go to and from duty assignments, remain in the course of their employment during such travel. *Chase v. Emery Manufacturing Co.,* 271 Pa. 265, 113 A. 840 (1921); *Nilsson v. Nepi Bros.,* 138 Pa. Superior Ct. 107, 9 A.2d 912 (1939), *aff'd* 338 Pa. 561, 14 A.2d 75 (1940); *Port Authority of Allegheny County v. Workmen's Compensation Appeal Board,* 70 Pa. Commonwealth Ct. 163, 452 A.2d 902 (1982); *Maher v. Hallmark Cards, Inc.,* 207 Pa. Superior Ct. 472, 218 A.2d 593 (1966); *Goodman v. University Shop, Inc.,* 195 Pa. Superior Ct. 129, 169 A.2d 316 (1961). In *Maher,* a case remarkably similar to this one, the deceased employee was a

salesman who went out of his Philadelphia territory to assist a fellow employee in performing company business in Downingtown, and when that work was finished spent the next six hours in Downingtown, much of the time drinking, and then suffered his accident in a company owned automobile on his way home. In *Maher,* the court stated: "We believe it was still the completion of the employer's tasks when Maher started home. *'The homeward trip was a necessary part of the business excursion.'* " *Id.* at 478, 218 A.2d at 596 (emphasis added.) In *Hockenberry v. State Workmen's Insurance Fund,* 133 Pa. Superior Ct. 249, 2 A.2d 536 (1938), the court stated:

> Our decisions uniformly hold that if transportation to and from place of employment is supplied, the employer is responsible to the employee or his dependents for compensation where accidental death is caused by injuries sustained while being transported by the employer.

*Id.* at 256-57, 2 A.2d at 539 (quoting *Beck v. Ashton,* 124 Pa. Superior Ct. 307, 311, 188 A. 368, 369 (1936)).

Defendant places principle reliance on our decision in the case of *Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board (Goerlich),* 56 Pa. Commonwealth Ct. 438, 425 A.2d 473 (1981), in which an award was reversed on the ground that the decedent was not in the course of his employment when he met his death in Michigan. We find this case to be inapplicable as a persuasive authority here. In *Bethlehem* the claimant's employment was in Michigan at the site of his death, so that he was really not a traveling or roving type employee and, while the employer paid his air fare to and from the Michigan job, he lived there during the week days each week of his employment; the injury did not happen during

the air transportation provided by the employer and the facts revealed that Michigan was so much his place of employment that he kept an automobile there and joined a club in that location.

We hold that the Claimant's decedent in this case, as in *Maher,* was engaged when killed in completing the employer's task on which he had embarked earlier in the day; that the homeward trip was a necessary part of his employment; and that, therefore, decedent was in the course of his employment when he met his death.

Employer, relying upon Section 301(a) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §431, contends that compensation benefits may not be payable in this case because the company vehicle was being operated by the decedent while under the influence of alcohol. Section 301(a) provides that "no compensation shall be paid when the injury or death is intentionally self-inflicted, or is *caused by* the employe's violation of law, but the burden of proof of such fact shall be upon the employer. . . ." (Emphasis added.) The difficulty with this contention is that the referee found to the contrary in his Finding of Fact No. 13, that "there was no showing that the Decedent's intoxication caused the accident," and in Finding of Fact No. 11, he accepted the testimony of a witness indicating that the decedent's accident was caused by his inability to avoid a collision because swerving to avoid it would have caused him to strike the witness. Since these findings of the referee are supported by substantial evidence, it is clear that the defendant has failed to meet its burden of proof under Section 301(a) to show that decedent's death was caused by intoxication or other "violation of the law."

Finally, Company points to its policy prohibiting the consumption of alcoholic beverages during working hours and urges that we support the Board's disallowance on the ground that under Section 201 of the Act, 77 P.S. §41, decedent's act in driving while under the influence of intoxicating liquor constitutes a misdemeanor under Section 1037 of the Vehicle Code, 75 Pa. C. S. §1037, and that this state of affairs must result in affirmance of the Board under the authority of *Abbott's Dairies v. Workmen's Compensation Appeal Board (Yates)*, 38 Pa. Commonwealth Ct. 423, 393 A.2d 517 (1978). The contention fails in light of the referee's specific findings which, as noted above, are supported by substantial evidence, that the death here was not proved to be due to decedent's intoxication; to the contrary, there is support for the inference that the accident was due to circumstances over which decedent, whether drunk or sober, had no control. In *Bethlehem,* contrary to the situation in this case, there was proof, held by this court to be sufficient to meet defendant's burden of proof that the decedent in that case was guilty of driving under the influence which was the cause of his death.

Accordingly, for the reasons set forth above, we will reverse.

### Order

Now, January 10, 1984, the order of the Workmen's Compensation Appeal Board at No. A-82596, dated July 29, 1982, is reversed, and the record in this case is hereby remanded to the Board for the computation and awarding of benefits to Joyce E. Oakes, widow of James C. Oakes, and to her on behalf of her children as provided in Section 307 of the Act. Jurisdiction relinquished.